WILLIAM WATERS *against* VICTOR COLLOT and VOISIN.

[S. C. 2. Dall. 247.]

Where sufficient reasonable ground has been shown to bring a case defore a jury court will not discharge the defendant on common bail.

Qu. How far the governor of a foreign island can justify his acts under his commission?

THIS was an action on the case, for consequential damages. The bail demanded was 800l. *Voisin* has been returned *non est inventus* by the sheriff; and a rule had been obtained, to show cause why the defendant Collot should not be discharged on common bail.

On the argument, the following facts were stated.

It appeared by the plaintiff's affidavit, that he was master of the brig Kitty, an Americian bottom, wholly owned by Stephen Girard, of Philadelphia. He sailed to Jeremie in the West Indies, where he continued two or three days, and sold part of his cargo to the French government there. That part of the island was then captured by the British troops, and they allowed him to depart to Cayemette, another port in the island, where he sold a part of his cargo to the British, and then sailed for Philadelphia. On his voyage home, he met with a storm, and then falling in with a French privateer, was carried by her into Basseterre, in the island of Guadaloupe, and was there libelled as a prize.

It appeared by the extracts from the proceedings of that court, that the charges against the brig in the libel were, trading with the British, and carrying provisions to them as enemies, having a British register on board, and also a whitecockade in a pocket book.

On the 18th January 1794, the Court of Admiralty made a decree, declaring that the brig appeared to belong to Stephen Girard, and was American property, that no double clearances or papers existed on board, except what was necessary for the safe conduct of the vessel, and that there appeared no ground of confiscation. The vessel and cargo were therefore released, and the captors condemned in costs, "but the ultimate decision on the question of prize was remitted to whom it may concern." The decree subjoins, "it is necessary to make a distinction between the question of prize and its merits, and what regards the political situation and safety of the island, which belongs to the committee of supreintendence and the governor."

Collot, the defendant, was then governor of the island of Gaudaloupe, and had been appointed such by Louis XVI, late king of the French, on the 13th June 1792, and among other things, was authorized "to do, and cause to be done, every thing which he might think proper for

the safety of the island,"which commission was shown to the court. *Voisin*, the other defendant, was intendant general of the island.

On the 19th January, Linnard and co., the owners of the privateer, petitioned the governor and intendant general to have an appeal from the decree; who thereupon, on the same day, directed an appeal to a co-ordinate district court of admiralty at Point Petre, in the same island, and ordered possession of the brig to be taken.

On the 21st January, the civil commissary made a representation to the governor and intendant, remonstrating against their conduct as illegal, and stating that " they could know nothing " of the facts, on which the decree was given." And on the same day the latter repealed their former order as premature, and founded on an imperfect representation of facts made to them.

On the 23d January, the plaintiff applied to the district court of Basseterre, to be put in possession of his vessel and cargo, who on the next day answer him, that the the execution of their decree had been prevented by the governor.

On the 24th January, the president of the court repaired on board the brig, to take off the seals and execute their decree, but was opposed by one of the owners of the privateer, who persisted in the appeal; and thereupon the president postponed the execution of the decree; and the governor and intendant made a new order respecting the vessel.

On the 26th January, the governor and intendant general, upon principles of pure republicanism, by their own act, condemn the brig and cargo as prize, on the owners of the privateer giving security.

On the 29th January, the plaintiff made a formal protest against this conduct, and abandonment of the vessel and cargo, he having at this time a considerable private adventure on board ; and on the same day the national commissary declared, that the execution of the court's decree had been prevented by the governor and intendant. And on the 30th January 1794, the latter received a notification of the captain's protest and abandonment.

In the spring of 1795, Collot published in Philadelphia, "a summary of the events which happened in Guadaloupe, from March 1793, to April 1794, under his administration," presented to the national assembly of France ; and therein particularly complained of his being arrested in the present action.

Part of this summary was read against him by the plaintiff's counsel, as it admitted many of the facts stated in the plaintiff's

affidavit. And the defendant also read therefrom the opinion of Mr. Bradford, late attorney general of the United States, as given to the secretary of State, on Collot's representation of facts, that on a proper application, this court would probably discharge the defendant on common bail.

The plaintiff founded his cause of action, on the wanton exercise of power by the defendant, not on the ground of state necessity, but for the benefit of a few privateers-men. What he did, was in abuse of the authority delegated to him by the late king's commission. A governor or public officer may be sued for contracts or outrages done by them as individuals in an other country. Their exemption from suits is merely on account of the exercise of their public functions, and for what they do in their political capacity. 1 Term Rep. 172, 674. The Court of King's Bench has *prima facie* general jurisdiction, and if a governor whishes to excuse himself from a suit, he should plead his commission and his powers. Cowp. 172. It is enough for the plaintiff that he has now shown reasonable grounds of bail.

The defendant's counsel insisted, that if their client had authority over the vessel and cargo, as governor of the island of Guadaloupe, this court would take on themselves to judge of the regularity of his proceedings. His commission impowered him to take such steps as he thought proper for the safety of the island. And though royalty was overthrown in France on the 10th August 1793, it was some time before that event was consummated in the French West Indies. Guadaloupe was actually taken by the British arms in May 1794; and it may be reasonably presumed, that the governor had apprehensions of impending danger a few months preceding, and that the safety of the island was then in jeopardy.

It appears, that courts of admiralty in the French dominions, in prize causes, were formerly bound to remit their proceedings to the secretary general of the marine, in order that right might be done by the admiral and commissary. 2 Tom. Ordon. de France, 318, (ed. 1744.) And it is agreed by the plaintiff's counsel, that even after the establishment of a republican form of government, the ultimate power of decision in prize causes, was lodged in a proper constituted tribunal in France. The very decree of the Court of Admiralty of Basseterre recognized the authority of the committee of superintendence and the governor, on the principle of political expendience. Of the relative safety of the island, the defendant was the sole judge, and

this court cannot be competent to determine on the circumstances of state necessity, under which he acted, or on the extent of his powers. Whether a particular matter was within his commission as governor, forms one species of inquiry. But whether he has abused it, is a question totally different. Whatever may have been his political conduct as govenor, it can only be inquirable into, in France. Mr. Ingersoll asserted himself as counsel for the minister of France on this argument, and in that capacity, insisted, that the defendant, as late govenor of an island, part of the dominions of an independent state, was not bound to give bail for his official acts, before a foreign tribunal.

Lord Mansfield lays down the rule, that the conduct of British governors can only be reviewed in the King's Court in England. Cowp. 171, 173.

The present governor of this state has sent soldiers on board of French privateers, under a requisition from the executive of the United States, to preserve the rights of neutrality. Will it be asserted, that after his administration is expired, he could be prosecuted therefor in the courts of France ?

If the plaintiff has been injured, his remedy must be by an application to the executive of France, or by a pursuit of the appeal there, on the security given by the owners of the privateer.

The present principle contended for by the plaintiff, is directly repugnant to the decision of the Supreme Court of the United States, in the case of James Yard v. Samuel P. Davis. There a prohibition was issued on the 24th August last, to the District Court of Pennsylvania, for this, that the vessel of war, or corvette Cassius, had been carried into *Port de Paix* in Hispaniola, and was there proceeded against in the admiralty, the final decision whereof, as a prize cause was referred to the proper tribunal in France. And the prohibition was produced in court.

The plaintiff's counsel in reply. The defendant is not considered in France, to have acted officially in this business. Nor does it appear probable, from the summary he has published, that he will return thither, to await the decision of the executive. The minister has pressed his going home, but he evades it. He may therefore be considered as an emigrant, and the French government will not interfere.

If there was not even security given by the owners of the privateer, under the condemnation of the governor and intendant general, (which is much doubted,) it would afford no grounds for the prize court in France taking up the appeal. It would be considered as an arbitrary act, not cognizable in the dernier resort, as from the decree of a regular

tribunal. The governor and intendant had no judicial authority. The commission to the former was of a mere military nature, referring to the laws of the national convention, and neither vested him with a jurisdiction in prize cases, nor with an authority to violate the rights of a neutral nation. And were the facts otherwise, the king of the French had no constitutional claim to give such powers as are contended for, since Frence was then a government of laws.

The District Court of Admiralty of Basseterre in their proceeding, declare themselves the sole body impowered to inquire into and determine on captures, and every thing will be presumed in favor of their jurisdiction. Collot and Voisin, by revoking their first improvident mandate, recognize that authority in the fullest terms. Though it is admitted, that the admiralty decree was only by way of advice in the first instance, yet it was executory, and conclusive likewise, unless an appeal was interposed. Their proceedings were more than inchoate ; for they order their decree to be executed.

The governor's conduct cannot possibly be ascribed to motives of state necessity. Had the vessel and cargo been condemned of the use of the republic, under strong existing circumstances, much more could have been urged in the defendants favor. But here is an arbitrary assumption of judicial powers, on principles of pure republicanism, as it is falsely styled ; and because the governor and intendant, without being possessed of the true facts to inform their judgments, capriciously think the court had erred, they commit a violent outrage on the property of Girard and Waters, and give it to Linard and Co., and the privateer crew, against the established laws of the country.

If the plaintiff cannot obtain redress in the present mode, he is totally without remedy. The courts of the United States have undertaken to decide on American property, captured by the ships of war of foreign powers, notwithstanding the commanders of such ships have been duly commissioned by such powers.

In answer to the question put on the other side, it is freely admitted, that the governor of the state could not be amenable in the courts of France, for sending soldiers on board of French privateers in the harbors, in consequence of a proper requisition ; because it is his constitutional duty to carry the laws of the union into execution. But we put another question in return, much more analogous to the circumstances of the present case.

Suppose the governor of this state should forcibly obstruct the judgment of this court on a foreign attachment ; would not he be responsible at the suit of the injured party, in another country,

where there was the semblance of distributive justice? Could he, after a final judgment by the proper constituted authority, without impunity, by his own mere fiat, order the goods attached into the hands of the losing party?

By the Court. This question has been argued with the same degree of warmth and minuteness, as if we had been engaged in a trial of the merits. The court will not now give the most distant sentiment, how far the defendant can justify his conduct, as an official character. Sufficient reasonable ground has been shown to bring the matter before the proper tribunal to ascertain facts, a jury of the country. And therefore we unanimously discharge the rule.

Messrs Dallas and Du Ponceau, *pro quer*.
Messrs. Ingersoll and Lewis, *pro def*.